Irving Younger, J.
Defendants own an office building equipped with a typical freight entrance constructed as follows: a large street-level bay leads to a raised platform. Trucks park in the former, their rears abutting the latter, and merchandise is loaded or unloaded horizontally. A concrete ramp — seven feet long and tipped at a 45 degree angle — runs from the platform to the floor of the bay. Where the ramp meets the floqr lies a steel plate.
Plaintiff is a truck driver. On January 23, 1968, he drove to the building — as he had done many times in the preceding eight or nine months — to make a pick-up. All spaces in the bay were filled. Unwilling to wait, plaintiff parked his truck outside. IJe went to the mailroom of a firm in the building and collected the packages intended for him. Plaintiff’s problem: how to get the packages off the platform and onto the street. Plaintiff’s solution: he loaded the packages on a cart, took a position in front of the cart facing it, and proceeded to pull the cart backwards down the ramp. The steel plate — apparently in bad condition *998 — intervened. Plaintiff tripped and fell. This lawsuit followed.
Assuming that defendants ’ maintenance of the steel plate was negligent, the issue is whether plaintiff was contributorily negligent. He testified that this'backward mode of moving the cart down the ramp was the customary way of doing it. By no means does it follow that plaintiff’s conduct was sufficiently careful. ‘ ‘ What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not.” (Texas & Pacific Ry. Co. v. Behymer, 189 U. S. 468, 470 [Holmes, J.]). Here, I am compelled in all conscience to find that plaintiff’s conduct — refusing to wait for a place at the platform and backing down the ramp with a cartful of packages — fails to meet the standard of “ reasonable prudence.”
Plaintiff’s injuries were not trivial. I am as confident as one can be about these matters that, had the case been tried to a jury, the jury would have determined the sum of plaintiff’s damages in a substantial amount, deducted a portion equivalent to the degree of his negligence, and returned a verdict for the difference. In short, as every trial lawyer knows, the jury would likely have ignored its instructions on contributory negligence and applied a standard of comparative negligence.
It would be comfortable for me simply to guess what the jury’s verdict would have been and then file a one-sentence decision holding defendants liable in that amount. Comfortable but false. My duty is to apply the law as I understand it, and I do not understand that, no matter what a jury might do, a Judge may pretend to make a decision on the basis of contributory negligence while actually deciding on comparative negligence.
Alternatively, and bearing in mind that the law is a living thing, I could ask myself whether it is not time in New York to reconsider the rule of contributory negligence. Is there anything besides habit to recommend it? Does it truly have its origins in nothing but distrust of juries and benevolence to industry? (See Malone, Formative Era of Contributory Negligence, 41 Illinois L. Bev. 151.) Would not the rule of comparative negligence fulfill whatever purposes are served by the rule of contributory negligence and also produce decisions — in cases like this one, for example — more consistent with a cultivated sense of justice than the all-or-nothing results required by the rule of contributory negligence?
I do not know how I would answer these questions. I do know that we have been instructed that it is for Legislatures and higher courts to climb the mountains of reform while Trial *999 Judges keep to the easy paths of stare decisis. (Bierman v. Consolidated Edison Co. of N. Y., N. Y. L. J., May 15, 1970, p. 2, col. 7.)
Accordingly, having found that plaintiff’s own negligence contributed to some degree to the happening of the accident, I must dismiss the complaint.